**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL ACTION NO. 5:15-CV-00083-RLV-DCK**

| | | |
|---|---|---|
| **DAVID THOMAS SILVERS, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **IREDELL COUNTY DEPARTMENT OF** | ) | |
| **SOCIAL SERVICES; D.S.S. DIR.** | ) | |
| **DONALD C. WALL, in his individual and** | ) | |
| **official capacities; ASST. D.A. PAXTON** | ) | |
| **BUTLER, in his individual and official** | ) | |
| **capacities, and the CITY OF** | ) | |
| **STATESVILLE, N.C.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

       **THIS MATTER IS BEFORE THE COURT** on Plaintiff's Motion for Default Judgment (Doc. No. 16) and Defendants' Motion to Dismiss Plaintiff's First Amended Complaint as to Defendants Iredell County Department of Social Services (the "Department") and Donald C. Wall (Doc. No. 5).[1]

       Because the parties' submissions are filed and pending, this matter is ripe for the Court's review. After a thorough review of the record, the Court **DENIES** Plaintiff's Motion for Default Judgment and **DENIES WITHOUT PREJUDICE** Defendants' Motion to Dismiss. Plaintiff is **GRANTED LEAVE** to file a second amended complaint, as provided below.

---

[1] While the motion to dismiss purports to have been only brought by Defendant Wall, the motion states, on its face, that it has been brought by Defendant Wall in his "individual and official" capacities. [Doc. No. 5] at p. 1. An official capacity claim is, in actuality, a claim against the governmental entity employing the individual named in the lawsuit. See, e.g., Graham v. Kentucky, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (internal quotations and citations omitted)). Because Defendant Wall has filed the motion to dismiss in his individual and official capacities, the Court will treat the motion as having been filed by both Defendant Wall, individually, and the Department. See Graham, 473 U.S. at 165-66.

## I.    BACKGROUND

### A.    Factual Allegations

Plaintiff David T. Silvers, Sr. is the father of four children – two boys and two girls. [Doc. No. 2] at ¶ 1. In December 2000, Plaintiff had retained custody of his eldest child and was pursuing custody of his three younger children. Id. The three youngest children lived with their mother in Maryland. Id. On December 26, 2000, Plaintiff was awarded custody of his three younger children by a Maryland state court. Id. On April 21, 2003, Plaintiff's award of custody was affirmed by a Maryland appellate court. Id. at ¶ 2. At that time, the four children were residing with Plaintiff at a residence located in Statesville, North Carolina. Id.

On June 5, 2004, Plaintiff's three youngest children visited their mother for the summer. [Doc. No. 2] at ¶ 3. At some point thereafter, Defendant Wall directed the Department to take the Plaintiff's four children into temporary custody. Id. A guardian ad litem was also appointed for the children. Id. While they were in the temporary custody of the Department, the Plaintiff was permitted to have only supervised visits with the children. Id. Plaintiff claims that his "freedom of speech was suppressed [during his supervised visits] by social workers" acting under Defendant Wall's orders. Id. The children's mother, however, was permitted to visit the children unsupervised. Id. During these visits, Plaintiff claims that the mother "continued coercing;" yet, Plaintiff does not allege who was coerced, how such person(s) were coerced, or for what purpose such person(s) were "coerced." Id.

Sometime between June 2004 and March 2005, a custody hearing was scheduled. [Doc. No. 2] at ¶¶ 3-4. While the Plaintiff's children were in temporary custody, the Department allegedly "conspired with [the] Assistant District Attorney of Iredell County" Paxton Butler – though the First Amended Complaint does not specify the substance of the alleged "conspiracy"

or its purpose. Id. at ¶ 3. Defendant Butler threatened Plaintiff's counsel with criminal charges related to obstruction of justice "if [Plaintiff] proceeded with [the] custody hearing . . . ." Id. During the custody hearing, "there was slander from hearsay" by a social worker, and custody was "prejudicially and illegitimately taken" from Plaintiff and awarded to the mother by "Iredell County and the City of Statesville."[2] Id.

In March 2005, Plaintiff drafted and delivered correspondence to the children's guardian ad litem for the purpose of communicating the "honorable achievements in his sired family that were disregarded from others" who allegedly "salaciously and treacherously coerc[ed] [Plaintiff's] sired children into a breach of promise, and disrespectful and ungrateful slander[.]" [Doc. No. 2] at ¶ 4. Plaintiff claims that his correspondence was "non-threatening freedom of speech in a religious writing . . . ." Id. Plaintiff claims that, upon receiving his correspondence, the guardian ad litem "conspired" with Defendant Butler and forwarded Plaintiff's correspondence to him without his consent; again, however, the First Amended Complaint fails to detail the purpose or substance of this alleged conspiracy. Id. Defendant Butler began receiving Plaintiff's correspondence and circulating it without his consent. Id.

On March 11, 2005, Defendant Butler "maliciously, insensibly and needlessly" filed "spurious and totalitarian charges" of "indecent liberties" and "statutory rape" against the Plaintiff by utilizing "what he wanted from the correspondence between [Plaintiff] and [the] Ad Litem[,] while disregarding the exculpatory claim . . . [that] there was libelous slander from [P]laintiff's sired children [that was] coerced by the mother." Id. at ¶ 5. Plaintiff claims that, by omitting

---

[2] "Iredell County" has not been named as a party to this lawsuit. Rather, as far as the Court can divine, the only county entity against which claims have been made is the Department. Plaintiff's claim against Defendant Butler in his "official capacity" is not a claim against Iredell County because, under North Carolina law, Defendant Butler is not an employee of the county; rather, he is an official employee of the State of North Carolina. See N.C. Const. art. IV, §§ 18, 20; accord N.C. Gen. Stat. §§ 7A-60, 7A-65; see also McNair v. Nash County, 2012 U.S. Dist. LEXIS 99614, at *5-6 (E.D.N.C. 2012).

exculpatory evidence from his presentation, Defendant Butler "mislead" the grand jury. Id. The only "exculpatory evidence" allegedly not disclosed by Defendant Butler was "[Plaintiff's] claim[] that the mother, with no credibility, coerced [Plaintiff's] sired children into slandering their father[.]" Id. Plaintiff claims Defendant Butler unlawfully represented to the grand jury that his children were subjected to an oppressive and unstable environment while living with him. Id. The First Amended Complaint does not allege whether Plaintiff was ever tried or convicted of these charges. However, Plaintiff does allege that, on November 25, 2014, these "charges" were expunged by order of a state court in Iredell County. Id. at ¶ 9.

Plaintiff alleges that he protested Defendant Butler's actions on September 19, 2007. Id. at ¶ 6. On October 12, 2007, Defendant Butler charged Plaintiff with "fraudulently burning [a] dwelling." Id. Defendant claims that this charge was unlawful because "higher State Courts previously held that charge does not apply" when neither substantial harm to another nor insurance fraud result from the act. Id. Plaintiff does not allege whether he was convicted of this charge or plead to this charge, or whether this charge was dropped.

On January 25, 2009, Plaintiff was confined to prison or was otherwise taken into the custody of the state; however, the First Amended Complaint does not allege whether the detention resulted from any of the above-mentioned charges, whether it occurred as the result of a trial or plea, or whether it resulted from some sort of civil detention or guardianship. Id. at ¶ 7. In fact, the First Amended Complaint does not allege *why* Defendant was taken into custody in 2009 or *who* initiated and directed the legal process against the Plaintiff. While confined by the state, Plaintiff was "deprived of liberty and due process" because he was improperly sent to a "state mental institution," which allegedly forced him to take "harmful drugs." Id. Plaintiff does not allege *who* improperly sent him "back and forth" to this "mental institution" or *who* forced him to take

"harmful drugs." Plaintiff was released from custody on August 28, 2012 because of a "dismissal." Id.

        B.      <u>Procedural Background</u>

On June 30, 2015, Plaintiff filed his Complaint in this Court against the above-named defendants. [Doc. No. 1]. On July 21, 2015, Plaintiff filed his First Amended Complaint. [Doc. No. 2]. Plaintiff has brought his claims pursuant to Sections 1983 and 1985 of Title 42 of the United States Code. <u>Id.</u> On July 22, 2015, Defendant Wall was personally served with summons and the First Amended Complaint. [Doc. No. 4]. On July 27, 2015, Defendant Butler was personally served with summons and the First Amended Complaint. [Doc. No. 10]. The City of Statesville (the "City") has never been served – despite Plaintiff making certain accusations that can be construed to include the City. <u>See</u> Fed. R. Civ. Pro. 4(j)(2). Further, Iredell County has never been served – despite Plaintiff making certain accusations that can be construed to include the county. <u>Id.</u> Finally, the State of North Carolina has never been served – despite Plaintiff alleging an "official capacity" claim against Defendant Butler, a state employee. <u>Id.</u>

On July 30, 2015, Defendant Wall and the Department filed a motion to dismiss, which is currently pending before the Court. [Doc. No. 5]. Defendant Butler has never plead or otherwise defended against Plaintiff's First Amended Complaint. On August 21, 2015, Plaintiff filed a motion for entry of default against Defendant Butler, which was entered on August 24, 2015. [Doc. No. 14]; [Doc. No. 15]. On August 27, 2015, the Plaintiff filed a motion for default judgment against Defendant Butler. [Doc. No. 16].

## II.    DISCUSSION

### A.    Plaintiff's Motion for Default Judgment Against Defendant Butler

#### 1.    *Legal Standard of Review Applicable to Motion for Default Judgment*

Plaintiff's motion for default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure. Fed. R. Civ. Pro. 55. Upon a showing that a party against whom judgment is sought has failed to plead or otherwise defend, the clerk must enter the party's default. Fed. R. Civ. P. 55(a). After the clerk has entered a default, the plaintiff may seek a default judgment. See Fed. R. Civ. P. 55(b). The entry of a default judgment is left to the sound discretion of the court and no party is entitled to a favorable entry of default judgment as a matter of right. See Black v. F & S, LLC, 2008 U.S. Dist. LEXIS 100577, at *6 n.6 (W.D.N.C. 2008) (Voorhees, J.) (citing United States v. Ragin, 113 F.3d 1233, 1997 U.S. App. LEXIS 11827, at *5 (4th Cir.1997)); Draper v. Coombs, 792 F.2d 915, 924 (9th Cir.1986)) see also Advantage Media Group v. Debnam, 2011 U.S. Dist. LEXIS 62678, at *3 (M.D.N.C. 2011); EMI April Music, Inc. v. White, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009); S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005). Without question, because the American civil litigation system is adversarial by nature, it is the "strong policy" of the Fourth Circuit to decide cases on their merits. See, e.g., Colleton Prep. Academy, Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417-21 (4th Cir. 2010). However, default judgment serves as an appropriate remedy in certain circumstances where the adversarial system breaks down. See Dow Corning Corp. v. Xiao, 2013 U.S. Dist. LEXIS 110961, at *8-9 (E.D. Mich. 2013). A breakdown typically occurs where a party, against whom affirmative relief is sought, refuses to engage in adversarial litigation. Id.

Per Rule 55(b), the well-pleaded factual allegations of the complaint that concern liability are deemed admitted upon a party's default, in contrast to allegations concerning only damages or

conclusions of law. See Cannon v. Exum, 1986 U.S. App. LEXIS 38066, at *8 (4th Cir. 1987)

(citing Nishimatsu Constr. Co. v. Houston National Bank, 515 F.2d 1200, 1206 (5th Cir. 1975));

see also Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir.

1983); accord Fed. R. Civ. P. 8(b)(6) (a defaulting party is deemed to admit factual allegations of

the plaintiff's complaint, "other than [those] relating to the amount of damages"). Although a

defaulting party "admits the plaintiff's well-pleaded allegations of fact" as to liability, the party in

default is "not held . . . to admit conclusions of law" or allegations regarding liability that are not

"well-pleaded." Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). Thus, "a

default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's

right to recover." Id. (citation omitted); see also 10A WRIGHT, MILLER & KANE, FED. PRAC. &

PROC. CIV., § 2688 (3d ed. 1998) ("WRIGHT, MILLER") ("[L]iability is not deemed established

simply because of the default, and the court, in its discretion, may require some proof of the facts

that must be established in order to determine liability."); accord Ohio Cent. R. Co. v. Central

Trust Co., 133 U.S. 83, 91 (1890).

    A plaintiff's burden in moving for default judgment is not satisfied, however, by simply

pleading facts; rather, the plaintiff's complaint must also state a cognizable claim to which his or

her well-pleaded facts provide support and show an entitlement to relief. See Ryan, 253 F.3d at

780 ("The court must, therefore, determine whether the well-pleaded allegations in [the plaintiff's]

complaint support the relief sought . . . ."); 10A WRIGHT, MILLER, § 2688 ("[I]t remains for the

court to consider whether the unchallenged facts constitute a legitimate cause of action . . . .").

Indeed, "[a] default judgment is unassailable on the merits . . . only so far as it is supported by

*well-pleaded* allegations, assumed to be true." Nishimatsu, 515 F.2d. at 1206 (citing Thomson v.

Wooster, 114 U.S. 104 (1885)) (emphasis in original).

In Nishimatsu, *supra*, a leading default judgment case, the Fifth Circuit reviewed a situation wherein default judgment was awarded for breach of contract under Texas law. There, an individual named Jack Baize signed a contract on behalf of South East Construction Company ("SECON"). Id. at 1205. The contract was allegedly breached and Nishimatsu sued Baize individually for the breach – obtaining a default judgment against him. Id. The Fifth Circuit reversed. The court observed that Baize had signed the contract by writing SECON's name, followed by "By: Jack D. Baize." Id. at 1205. According to the Fifth Circuit, Nishimatsu's complaint alleged that both Baize and SECON were parties to the contract; however, the court noted that this allegation was "contradicted and controlled by the contract showing that Baize signed only as an agent." Id. at 1206. Applying Texas law, the court reasoned that, "if an agent signs a contract for a disclosed principal, he does not intend to make himself a party to the instrument," and the signature form used by Baize was "uniformly regarded as indicating that the principal alone and not the agent is a party to the contract." Id. at 1207. For this reason, the court concluded that the contract "binds only [SECON]. [Thus,] [t]he complaint, to the extent that it seeks relief against Baize on that contract, is incapable of supporting the default judgment." Id. at 1208. Specifically, the court found that the complaint did not allege a "sufficient basis" to support the default judgment against Baize. Id. at 1206.

The Fourth Circuit has relied on Nishimatsu in crafting its interpretation of Rule 55(b) and in pronouncing the standard that district courts should apply when reviewing a motion for default judgment. See, e.g., Ryan, 253 F.3d at 780; see also DirecTV, Inc. v. Pernites, 200 Fed. App'x 257, 258 (4th Cir. 2006). Interpreting Rule 55 and Nishimatsu, the Fourth Circuit has declared that, upon a plaintiff's application for default judgment, district courts have an obligation to review the complaint to determine whether the plaintiff has alleged well-pleaded facts *and*, assuming

those well-pleaded facts are true, whether the complaint states a "sufficient basis" on which judgment may be entered. <u>Ryan</u>, 253 F.3d at 780 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact" so a court must "determine whether the well-pleaded allegations in [the] complaint support the relief sought in th[e] action." (quoting and relying on <u>Nishimatsu</u>, 515 F.2d at 1206); <u>see also</u> <u>DirecTV</u>, 200 Fed. App'x at 258 ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." (quoting <u>Nishimatsu</u>, 515 F.2d at 1206) (alteration in original)); <u>accord</u> <u>Balt. Line Handling Co. v. Brophy</u>, 771 F. Supp. 2d 531, 540-47 (D. Md. 2011). However, the Fourth Circuit has not elaborated on what <u>Nishimatsu</u>'s "sufficient basis" requirement means. <u>See</u> <u>DirecTV, Inc.</u>, 200 Fed. App'x at 258; <u>Balt. Line Handling Co.</u>, 771 F. Supp. 2d at 544.

Recently, other circuits have weighed in and have read <u>Nishimatsu</u> to require the application of a hybrid motion to dismiss standard in the default judgment context. <u>See</u> <u>Surtain v. Hamlin Terrace Found.</u>, 789 F.3d 1239, 1244-45 (11th Cir. June 16, 2015); <u>Wooten v. McDonald Transit Assocs., Inc.</u>, 788 F.3d 490, 496 (5th Cir. June 10, 2015). Interpreting <u>Nishimatsu</u>, the Eleventh Circuit determined that it is appropriate to apply the Rule 12(b)(6) standard announced in the Supreme Court's <u>Twombly</u> and <u>Iqbal</u> decisions to motions for default judgment. <u>See</u> <u>Surtain</u>, 789 F.3d at 1244-45 (applying the Rule 12(b)(6) standard to a motion for default judgment, stating that "[a]lthough <u>Nishimatsu</u> did not elaborate as to what constitutes 'a sufficient basis' for the [default] judgment, we have subsequently interpreted the standard as being akin to that necessary to survive a motion to dismiss for failure to state a claim"); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007). So holding, the Eleventh Circuit

determined that "a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Surtain, 789 F.3d at 1245.

The Fifth Circuit, however, recently vacated a decision that announced a standard similar to the one adopted by the Eleventh Circuit. Compare Wooten v. McDonald Transit Assocs., Inc., 788 F.3d 490, 496-500 (5th Cir. June 10, 2015) with Wooten v. McDonald Transit Assocs., 775 F.3d 689, 695-96 (5th Cir. Jan. 2, 2015). In its opinion, the court opted for an amorphous, less-strict standard, which, nevertheless, finds its basis in the same Supreme Court decisions. See Wooten, 788 F.3d at 496-500 (declining to apply the strict Rule 12(b)(6) standard announced in Twombly and Iqbal, thus vacating the previous panel decision, but adopting a less-strict standard that requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (citing Iqbal, 556 U.S. at 678)). The Fifth Circuit grounded its reasoning in a distinction between a motion to dismiss under Rule 12(b)(6) and a motion for default judgment under Rule 55. Id. at 498 n.3. The court held that because a defendant must ordinarily "invoke Rule 12" to "avail itself of that rule's protections[,]" it is inappropriate to apply a strict Twombly and Iqbal standard to a motion for default judgment because such a motion "is the product of a defendant's *inaction*[.]" Id. (emphasis in original).

The Fourth Circuit has not yet announced an opinion that explicitly applies either the Twombly/Iqbal standard or a similar, yet less demanding, standard in the default judgment context. See Balt. Line Handling, 771 F. Supp. 2d at 544. However, other district courts in this Circuit *have* utilized the Twombly/Iqbal standard in such context. See, e.g., Russell v. Railey, 2012 U.S. Dist. LEXIS 49370, at *7-8 (D. Md. 2012); Balt. Line Handling, 771 F. Supp. at 544; Wynne v. Birach, 2009 U.S. Dist. LEXIS 102276, at *6 n.6 (E.D. Va. 2009) (default judgment standard is "similar to that applied to a motion to dismiss" under Iqbal); Bogopa Serv. Corp. v. Shulga, 2009 U.S. Dist.

LEXIS 48469, at *3-4 (W.D.N.C. 2009) (Reidinger, J.) ("While in the context of a motion for default judgment the Court is not determining whether a claim has been stated upon which relief can be granted, but rather is determining whether to grant relief based on the presumed truth of the allegations, the standard of legal analysis is the same: can relief be granted based on the allegations made?").

This Court is persuaded that <u>Twombly</u> and <u>Iqbal</u> govern its review of the Plaintiff's motion for default judgment. The Court reaches this conclusion because it is not persuaded by the Fifth Circuit's reasoning for applying a less-strict standard. The Fifth Circuit declined to strictly apply <u>Twombly</u> and <u>Iqbal</u> because a motion to dismiss requires action from a defendant, while a motion for default judgment does not. However, this Court finds that the Fifth Circuit's distinction relies on form over substance.

In general, a plaintiff may seek relief only if the plaintiff has sustained a harm, which may be articulated into a plausible claim for relief that is buttressed with well-plead factual support. <u>Compare</u> Fed. R. Civ. Pro. 8(a); <u>Iqbal</u>, 556 U.S. at 678; <u>Twombly</u>, 550 U.S. at 570. A plaintiff carries the burden of stating his claim and proving that he is entitled to the relief sought – from the commencement of the action through its termination. The Fifth Circuit's opinion fails to recognize or discuss this burden, particularly as it applies when a plaintiff seeks affirmative relief from the court by way of a motion. While the Fifth Circuit correctly points out that Rule 12 and Rule 55 motions are procedurally different, the opinion assumes that this procedural difference is determinative without discussing *how* it is determinative or *how* it affects a plaintiff's ultimate burden to prove that he is entitled to the affirmative, substantive relief sought. Remarkably, in making its distinction between Rule 12 and Rule 55 motions, the court seems to imply that, because the "failure to state a claim" defense was not raised by a defendant at the pleading stage, the

plaintiff is somehow *released* from his or her burden to state a claim. Wooten, 788 F.3d at 498 n.3 (implying that a plaintiff's burden to state a claim must be "invoke[d]" under Rule 12 before that "rule's protections" may apply). However, one need only look to the Rules themselves to see that this is not the case. See Fed. R. Civ. Pro. 8(c)(1) ("failure to state a claim" is not an affirmative defense that is waived by failing to plead); Fed. R. Civ. Pro. 12(h)(1)&(2) ("failure to state a claim" is not waived by omission from a motion or pleading, and may be raised by later motion or at trial). This apparent failure in logic undermines the Fifth Circuit's reasoning.

While a defendant carries the burden to show that the plaintiff's complaint should be dismissed under Rule 12(b)(6), the plaintiff *always* carries the burden to prove that he should be granted affirmative relief on his claims by way of motion. Hence, a plaintiff carries the burden of proving that the court should affirmatively grant him judgment on the pleadings or summary judgment. See, e.g., Hill v. Terrell, 846 F. Supp. 2d 488, 490 (W.D.N.C. 2012) (Conrad, C.J.) ("A Rule 12(c) motion should only be granted if the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." (quotation and citations omitted)); Kontane, Inc. v. Banish, 2011 U.S. Dist. LEXIS 96899, at *5 (W.D.N.C. 2011) (Voorhees, J.) (same); see also Kirkman v. Tison, 2012 U.S. Dist. LEXIS 148587, at *24-29 (M.D.N.C. 2012) (discussing and applying standard where plaintiff moves for summary judgment); Great Divide Ins. Co. v. Midnight Rodeo, Inc., 2010 U.S. Dist. LEXIS 51598, at *4-5 (E.D.N.C. 2010) (same). When filing a Rule 55(b) motion for default judgment, a plaintiff similarly asks the court to grant affirmative relief on his or her claims, as a matter of law, in the form of a judgment based on the factual allegations of the complaint, which are deemed admitted as a result of the defendant's failure to plead. See Fed. R. Civ. Pro. 8(b)(6); Fed. R. Civ. Pro. 55(b)(2). The Court finds that such a request is analogous to a motion for judgment on the

pleadings under Rule 12(c), thus a similar legal standard should apply in both contexts. See Perez v. Wells Fargo N.A., 774 F.3d 1329, 1337 (11th Cir. 2014) (recognizing that Rule 55 "dovetails with Rule 12(c)").

In the Fourth Circuit, a motion for judgment on the pleadings is analyzed under the same standard as a Rule 12(b)(6) motion to dismiss. See Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009); Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). Thus, the Fourth Circuit requires that Twombly and Iqbal be applied when reviewing a motion for judgment on the pleadings. See Deutsche Bank Nat'l Trust Co. v. IRS, 361 Fed. App'x 527, 529 (4th Cir. 2010) (citing Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009)); accord Fitzhenry v. Indep. Order of Foresters, 2015 U.S. Dist. LEXIS 76750, at *3-4 (D.S.C. 2015); Mullins v. GMAC Mortg., LLC, 2011 U.S. Dist. LEXIS 35210, at *4-5 (S.D. W. Va. 2011). Because a Rule 55 motion "dovetails" a Rule 12(c) motion for judgment on the pleadings, this Court, like the Eleventh Circuit, finds that the Rule 12(b)(6) motion to dismiss standard – which includes Twombly, Iqbal, and their progeny – applies to a plaintiff's motion for default judgment.

Accordingly, when reviewing a motion for default judgment, this Court must examine the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999); accord Ryan, 253 F.3d at 780. In order to be granted a favorable default judgment, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Indeed, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A claim is facially plausible

when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id.

When considering a motion for default judgment, the court must accept as true all of the well-plead factual allegations contained in the complaint. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678. In order to claim relief, the complaint must allege facts that imply more than a "sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability[.]" Id. at 678 (quoting Twombly, 550 U.S. at 557). Critically, "'[t]he presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal . . . when the facts alleged in the complaint' cannot support the legal conclusion" alleged or relief sought. See Migdal v. Rowe Price-Fleming Int'l, 248 F.3d 321, 326 (4th Cir. 2001) (quoting Young v. City of Mount Ranier, 238 F.3d 567, 577 (4th Cir. 2001)). "Legal inferences drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments are not part of the consideration." Dolgaleva v. Va. Beach City Pub. Sch., 364 Fed. App'x 820, 827 (4th Cir. 2010); see also Eastern Shore Mkts., Inc. v. J.D. Assocs. LLP, 213 F.3d 175, 180 (4th Cir. 2000).

In applying this standard, the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (internal citations and quotation marks omitted); Dolgaleva, 364 Fed. App'x at 827. However, the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions[.]" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing *pro se*

complaint); accord Atherton v. Dist. of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94; Iqbal, 556 U.S. at 679)). The rules governing the generous construction of *pro se* pleadings "do[] not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Ashby v. City of Charlotte, 2015 U.S. Dist. LEXIS 103286, at *4 (W.D.N.C. Aug. 6 2015); Godfrey v. Long, 2012 U.S. Dist. LEXIS 2671, at *3-4 (E.D.N.C. 2012) (quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

> 2.    *Issues Presented by the Plaintiff's Motion for Default Judgment*[3]

In his First Amended Complaint, the Plaintiff makes a variety of opaque and vague allegations, which have coalesced into an almost indecipherable conglomeration of labels and legal conclusions, as well as wearisome exposition regarding irrelevant matters. With regard to actual well-pleaded factual matters, there is an utter dearth of material available for the Court to review. For the purpose of analyzing the pending motions, this Court has exerted considerable effort in the hope of untangling Plaintiff's essential claims from the hodgepodge of allegations found in the

---

[3] The Court notes that, though the majority of Plaintiff's allegations occurred several years ago, Plaintiff's First Amended Complaint cannot be dismissed as to Defendant Butler because of an applicable statute of limitations since, by failing to plead or otherwise defend against the First Amended Complaint, he has currently waived the ability to assert this affirmative defense. See, e.g., United States v. Williams, 684 F.2d 296 (4th Cir. 1982) ("Statute of limitations . . . is an affirmative defense that may be waived"); United States v. Wild, 551 F.2d 418 (D.C. Cir. 1977) ("Statute of limitations is not a jurisdictional bar, but mere affirmative defense"); see also Vance v. Hedrick, 659 F.2d 447 (4th Cir. 1981) ("Time bars to prosecution or trial of criminal cases, as of civil cases, are affirmative defenses which may be waived."). Likewise, though many of Plaintiff's allegations against Defendant Butler may be subject to the absolute immunity afforded to prosecutors, Defendant Butler has similarly waived this defense by failing to plead in response to the First Amended Complaint. See Owens v. Balt. City State's Attys. Office, 767 F.3d 379, 393 n. 4 (4th Cir. 2014). Whether these defenses may be revived if Plaintiff files a second amended complaint is an open question. Compare E.E.O.C. v. Morgan Stanley & Co., Inc., 211 F.R.D. 225, 227 (S.D.N.Y. 2002) (no); Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 2000) (yes); cf DiLoreto v. Oaklyn, 744 F. Supp. 610, 617 (D. N.J. 1990).

First Amended Complaint. Based on this evaluation, the Court extrapolates that the Plaintiff alleges the following:

Plaintiff claims that he has been deprived of "security, privacy, liberty, and property without due process of law" and that these deprivations have violated his rights under the "First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution" and "International Human Rights." [Doc. No. 2] at p. 1. He claims that his children were placed in foster care and custody was awarded to their mother in violation of his "First, Fourth, and Fourteenth Amendment[]" rights.[4] [Doc. No. 2] at p. 2 (¶ 2). He conclusorily claims his "freedom of speech" was suppressed by social workers (on orders of Defendant Wall) during his supervised visits with his children at the Department.[5] Id. He also claims that Defendant Butler improperly threatened his counsel with criminal charges if Plaintiff contested custody at his children's custody hearing. Id. Moreover, he claims that his children were "prejudicially and illegitimately taken" from him during the custody hearing by "Iredell County" and the "City of Statesville."[6] Id. at p. 3 (¶ 3).

Plaintiff further claims that his "non-threatening freedom of speech in a religious writing" sent to his children's guardian ad litem was shared with Defendant Butler without his consent and Defendant Butler unlawfully used such correspondence against him in grand jury proceedings. Id.

---

[4] This claim appears to be made only against the Department and Defendant Wall – not Defendant Butler. See footnote 5, *infra*.

[5] Because this claim pertains only to Defendant Wall, in his individual and official capacities, the Court will not analyze whether it is sufficient under Twombly and Iqbal. This Order primarily addresses only whether Plaintiff's motion for default judgment should be granted in light of the well-plead allegations of the First Amended Complaint. The Order does not undertake this analysis because, in its discretion, the Court will allow the Plaintiff to file a second amended complaint. This will allow the Plaintiff an opportunity to cure his deficient pleading. Once Plaintiff files his second amended complaint, or if Plaintiff fails to file a second amended complaint, Defendant Wall and/or the Department may re-file the motion to dismiss with respect to the allegations made against them.

[6] As in the case of the allegations against Defendant Wall and the Department, this Order will not analyze any allegations made against the City or the Iredell County government. Because neither entity has been served with the First Amended Complaint, Plaintiff is not entitled to default judgment (or any other affirmative relief) against such entities. To the extent Plaintiff alleges that the custody determination *itself* violated his constitutional rights, and that such violation is the result of the actions of "Iredell County," through the Department, the Court will not discuss this claim for the reasons specified in footnote 5. *Supra*.

at p. 3 (¶ 4).  He also claims that Defendant Butler filed "spurious and totalitarian charges" of "indecent liberties" and "statutory rape" against him by misleading a grand jury through the omission of "significant information that would negate probable cause," such as Plaintiff's claim that his children's mother "coerced" the children to "slander" the Plaintiff and to represent that he forced them to live in an "unstable" and "oppressi[ve]" home. Id. at p. 4 (¶ 5). On November 25, 2014, these "charges" were expunged by a state court in Iredell County. Id. at p. 6 (¶ 8).

Plaintiff also appears to claim that he was "harassingly, maliciously, and incompetently deprived of property" when, on October 12, 2007, Defendant Butler charged him with "fraudulently burning [a] dwelling." Id. at p. 5 (¶ 6). However, Plaintiff makes no factual allegation regarding what "property" was taken from him or how such "property" was taken. Plaintiff also appears to allege that Defendant Butler charged him with "fraudulently burning [a] dwelling" in contravention of unspecified state law. Id.

Finally, Plaintiff alleges that he was "deprived of liberty and due process" because, while in state custody between January 2009 through August 2012, he was "improperly" sent "back and forth a few times to a State mental institution," which "forc[ed]" him to take "harmful drugs" after the same mental institution had "cleared" him in October 2007. Id. at p. 6. (¶ 7). Plaintiff does not allege that his actual confinement between 2009 and 2012 was unlawful. Nor does Plaintiff allege who caused him to be sent "back and forth" to the "mental institution" or who forced him to take "harmful drugs."

So construed, the Court will now review Plaintiff's claims (made against Defendant Butler in his individual and official capacities) to determine whether the First Amended Complaint alleges sufficient factual allegations to support a default judgment against Defendant Butler.

### 3.    *Official Capacity Claim*

In his motion, Plaintiff seeks a default judgment against Defendant Butler in his official capacity. Because Defendant Butler is a state employee under North Carolina law, Plaintiff's official capacity claim constitutes a claim against the State of North Carolina. See Graham, 473 U.S. at 165-66; see also N.C. Const. art. IV, §§ 18, 20; accord N.C. Gen. Stat. §§ 7A-60, 7A-65; see also McNair, 2012 U.S. Dist. LEXIS 99614, at *5-6. The Supreme Court has made it clear that a "state" does not qualify as a "person" for purposes of claims made pursuant to Sections 1983 or 1985. See, e.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989); Mahle v. Municipality of Anchorage, 313 Fed. App'x 18, 19 (9th Cir. 2008); Ross v. Illinois, 48 Fed. App'x 200, 202 (7th Cir. 2002). Because North Carolina is not a "person" against which a Section 1983 or 1985 suit can be based, Plaintiff's official capacity claims against Defendant Butler *must* fail. Therefore, default judgment cannot be granted on these claims and Plaintiff's official capacity claims against Defendant Butler must be **DISMISSED**.

### 4.    *Individual Capacity Claim – Failure to State a Claim under 42 U.S.C. § 1985*

Plaintiff has rooted part of his First Amended Complaint on a Section 1985 claim against Defendant Butler in his individual capacity. Plaintiff's Section 1985 claim can only be premised on subsection (3) of that statute, which imposes liability upon persons who "depriv[e] . . . any person . . . [of] equal protection of the laws, or of equal privileges and immunities under the laws . . . ." See 42 U.S.C. § 1985(3). Subsections (1) and (2) are clearly inapplicable. See Bloch v. Mt. Mission Sch., 1988 U.S. App. LEXIS 19712, at *2 (4th Cir. 1988) (per curiam) (discussing 42 U.S.C. § 1985(2) and describing it as prohibiting "two or more persons from conspiring to deter by force, intimidation, or threat, any party or witness from attending or testifying truthfully in a *federal* court" (emphasis supplied)); Bald Head Ass'n v. Curnin, 2010 U.S. Dist. LEXIS 45737, at

*15 (E.D.N.C. 2010) (discussing 42 U.S.C. § 1985(1) and describing it as prohibiting "conspiracies to prevent a federal officer from performing his duties or from accepting such office"). In order to state a claim under 42 U.S.C. § 1985(3), a plaintiff must include an allegation of "class-based, invidiously discriminatory animus." Munson v. Friske, 754 F.2d 683, 695 (7th Cir. 1985); see also Griffin v. Breckenridge, 403 U.S. 88, 102 (1971) ("The constitutional shoals that would lie in the path of interpreting § 1985 (3) as a general federal tort law can be avoided by giving full effect to the congressional purpose . . . . The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.").

Here, even with a liberal construction, Plaintiff's First Amended Complaint contains absolutely no factual allegations which allow this Court to plausibly infer that Defendant Butler (or any other defendant) acted with a racial or other "class-based, invidiously discriminatory animus." See generally [Doc. No. 2]. While there are allegations which somewhat refer to Plaintiff's religious proclivities and mental functioning, [Doc. No. 2] at pp. 2-6, these general and nebulous allegations do not sufficiently imply – beyond a speculative level – that Defendant Butler (or others) acted with a "class-based" and "invidiously discriminatory animus" toward Plaintiff. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570. Therefore, Plaintiff's First Amended Complaint fails to state an individual claim against Defendant Butler under 42 U.S.C. § 1985 and default judgment cannot be entered on such claim.

5.    *Individual Capacity Claim – Failure to State a Claim under 42 U.S.C. § 1983*

The Court now turns to Plaintiff's individual Section 1983 claims against Defendant Butler. Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 creates only the right of action; it does not create any substantive rights; instead, substantive rights must come from the Constitution or federal statute. See Spielman v. Hildebrand, 873 F.2d 1377, 1386 (10th Cir. 1989) ("Section 1983 does not provide a remedy if federal law does not create enforceable rights."); see also Sawyer v. Asbury, 537 Fed. App'x 283, 290 (4th Cir. 2013) ("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" (quoting Albright v. Oliver, 510 U.S. 266, 271 (1994)). Rather, 42 U.S.C. § 1983 only authorizes an injured party to assert a claim for relief against a person who, acting under color of state law, violated the party's otherwise federally secured rights.

To state a claim upon which relief can be granted under Section 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). Broken down differently, a plaintiff must establish:

> (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia.

See M. SCHWARTZ, SEC. 1983 LITIG. CLAIMS & DEFENSES, § 1.04.

i.    PLAINTIFF'S FIFTH AMENDMENT CLAIM

At the outset, to the extent the First Amended Complaint attempts to allege liability against Defendant Butler under the Fifth Amendment, Plaintiff's First Amended Complaint fails to state a claim. The Fifth Amendment provides as follows:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. CONST. amend. V. The Fifth Amendment's Double Jeopardy Clause, privilege against self-incrimination, and Takings Clause are applied to the states, and their state actors, through the Fourteenth Amendment. Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155 (1980) (Takings Clause); Benton v. Maryland, 395 U.S. 784 (1969) (Double Jeopardy Clause); Malloy v. Hogan, 378 U.S. 1 (1964) (privilege against self-incrimination); but see Peters v. Kiff, 407 U.S. 493 (1972) (requirement of grand jury indictment not applicable to states). "Absent incorporation through the Fourteenth Amendment, the Fifth Amendment[] . . . does not proscribe conduct by state actors," and cannot, therefore, supply the basis for a Section 1983 action. See Luckett v. Turner, 18 F. Supp. 2d 835, 838-39 (W.D. Tenn. 1998).

Here, all of the defendants, particularly Defendant Butler, are state actors. The Court has reviewed the First Amended Complaint earnestly and, construing Plaintiff's allegations liberally and in his favor, the Court is unable to discern any specific factual allegations that plausibly implicate a claim based on the deprivation of a Fifth Amendment right that has been incorporated against the states. Plaintiff has not alleged that he was subjected to double jeopardy or self-incrimination. Further, his references to a deprivation of "property" are conclusory and lack factual

support, and thus do not plausibly imply that a "takings" occurred.[7] See [Doc. No. 2] at pp. 1, 5 (¶ 6). Thus, Plaintiff's First Amended Complaint fails to state a Section 1983 claim under the Fifth Amendment, and default judgment against Defendant Butler would be inappropriate on that basis.

ii. PLAINTIFF'S FIRST, FOURTH, AND FOURTEENTH AMENDMENT CLAIMS

Plaintiff also alleges First, Fourth, and Fourteenth Amendment claims; however, Plaintiff does not specifically tie any of his factual allegations to any particular constitutional provision. Because of Plaintiff's inartful pleading style, the Court believes that its analysis will be better served by examining each of Plaintiff's allegations to determine whether any one of them touch upon and allege the deprivation of a constitutional right.

Plaintiff first alleges that Defendant Butler improperly threatened his counsel with criminal charges if Plaintiff contested custody at his children's custody hearing. [Doc. No. 2] at pp. 2-3 (¶ 3). As a result of the hearing, Plaintiff lost custody of his children. Id. The Court construes this allegation as attempting to state a claim for the denial of Plaintiff's right to meaningful access to the courts.[8] It is well established that citizens have a right of access to the courts. See Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002); accord Pollard v. Pollard, 325 Fed. App'x 270, 272 (4th Cir. 2009). The right not only protects the ability to get into courts, but also ensures that such access be "adequate, effective, and meaningful." Bounds v. Smith, 430 U.S. 817, 822 (1977). The

---

[7] This allegation is also insufficient to allege that Plaintiff has been deprived of property interests without "due process of law" under either the Fifth or Fourteenth Amendments. Plaintiff has not alleged any facts indicating *what* property was deprived, or *how* it was deprived. Without further factual development, the Court cannot infer a plausible violation of the Plaintiff's substantive or procedural due process rights as they relate to this allegation. Thus, default judgment cannot be entered on this claim.

[8] The Supreme Court has not specifically determined from which specific constitutional provision this right arises; however, it has construed it to arise from both the First and Fourteenth Amendments. See Christopher v. Harbury, 536 U.S. 403, 415 n. 12 (2002) (citing Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983) (First Amendment); Wolff v. McDonnell, 418 U.S. 539, 576 (1974) (Fourteenth Amendment Due Process Clause); California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 513 (1972) (First Amendment); Boddie v. Connecticut, 401 U.S. 371, 380-381 (1971) (Fourteenth Amendment Due Process Clause)).

denial of meaningful access to the courts is established where a party engages in actions which effectively cover up evidence or actually render any state court remedies ineffective. Swekel v. City of River Rouge, 119 F.3d 1259, 1262 (6th Cir. 1997); accord Pollard, 325 Fed. App'x at 272. However, a "plaintiff cannot merely guess that a state court remedy will be ineffective because of a defendant's actions." Swekel, 119 F.3d at 1264. To prevail on his claims, a plaintiff must demonstrate that a defendant's actions foreclosed him from litigating in state court or rendered ineffective any state court remedy he previously may have had. Id. at 1263-64.

A backward-looking access to courts claim, like Plaintiff's, lies when he identifies a "specific case[] that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Christopher, 536 U.S. at 413-14. In order to plead a backward looking denial of access to the courts claim, a plaintiff must allege, with specificity, a "non-frivolous" and "arguable" claim; that his remedy for that claim has been denied and is "completely foreclosed;" and that the defendant's actions prevented him from litigating that claim. Id. at 415-16; Lewis v. Casey, 518 U.S. 343, 353 n.3 (1996); Broudy v. Mather, 460 F.3d 106, 120 (D.C. Cir. 2006). "[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." Christopher, 536 U.S. at 416. "[I]f relief on the underlying claims is still available in a suit that may yet be brought," then a plaintiff's denial of access claim cannot prevail. Broudy, 460 F.3d at 120.

Additionally, a plaintiff "must come forward with something more than vague and conclusory allegations of inconvenience or delay in his instigation or prosecution of legal actions . . . . The fact that a[] [plaintiff] may not be able to litigate in exactly the manner he desires is not sufficient to demonstrate the actual injury element of an access to courts claim." Godfrey v. Wash.

County, 2007 U.S. Dist. LEXIS 60519, at *38-40 (W.D. Va. 2007) (citing Lewis, 518 U.S. at 351, 354).

Here, Plaintiff's First Amended Complaint falls far short of stating a viable claim that he was denied access to the courts by Defendant Butler during his children's custody hearing. Plaintiff was on notice of the hearing and had counsel. See [Doc. No. 2] at p. 2 (¶ 3). Additionally, Plaintiff alleges only that Defendant Butler threatened his *counsel* with charges of obstruction of justice should Plaintiff participate in the hearing – not Plaintiff himself. Id. Under North Carolina law, a custody hearing is a civil proceeding. See, e.g., Stancill v. Stancill, 773 S.E.2d 890, 894, (N.C. Ct. App. 2015). A civil plaintiff is not afforded the constitutional right to counsel. See Droste v. Julien, 477 F.3d 1030, 1036 (8th Cir. 2007) ("In the civil context, the constitutional right to counsel of one's own choice is not implicated."); accord Gandy v. Reid, 505 Fed. App'x 908, 911 (11th Cir. 2013); Ward v. Ortho-Mcneil Pharm., 2015 U.S. Dist. LEXIS 87848, at *5 (E.D.N.C. 2015) ("There is no constitutional right to counsel in civil cases." (citing Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975)). Thus, even assuming Defendant Butler made the alleged threat of criminal prosecution against Plaintiff's counsel during the custody proceedings, Plaintiff was still free to participate in the proceedings *sans* counsel. See Powell v. Gorham, 2013 U.S. Dist. LEXIS 83858, at *79 (N.D. Ala. 2013) ("[A]ny alleged threats or coercion to Plaintiffs' counsel did not inhibit their access to the courts, or constitute an obstruction of justice.").

Moreover, Plaintiff's First Amended Complaint does not allege that Defendant Butler's threat of criminal prosecution *actually prevented Plaintiff from participating in the custody hearing*. [Doc. No. 2] at pp. 2-3 (¶ 3). Indeed, the First Amended Complaint appears to show, on its face, that Plaintiff *did* participate in the hearing. See id. at p. 3 (¶ 3) (wherein Plaintiff describes what occurred during the proceedings). It seems clear to the Court that if the Plaintiff still

participated in the custody hearing, despite the threat to his counsel, then Plaintiff was not denied access to the courts by Defendant Butler's actions.

Critically, the First Amended Complaint also does not allege that Defendant Butler's actions deprived Plaintiff of any available state law remedies, such as an appeal or his right to seek a modification of custodial rights. See, e.g., N.C. Gen. Stat. §§ 7B-1000, *et seq*. Thus, the First Amended Complaint does not allege that Plaintiff's state remedies were "completely foreclosed" by Defendant Butler's actions. See Broudy, 460 F.3d at 120. Rather, at most, it alleges only that Butler's actions caused him "inconvenience or delay" in participating in his children's custody hearing. See Godfrey, 2007 U.S. Dist. LEXIS 60519, at *38-40. Thus, Plaintiff's First Amended Complaint does not state a viable claim for an unconstitutional denial of access to the courts, and default judgment against Defendant Butler would be inappropriate on that basis.[9]

Next, Plaintiff seems to argue that his "non-threatening freedom of speech in a religious writing" was shared with Defendant Butler without his consent and Defendant Butler used such correspondence against him in grand jury proceedings. [Doc. No. 2] at p. 3 (¶ 4). Specifically, Plaintiff claims that Defendant Butler filed "spurious and totalitarian charges" of "indecent liberties" and "statutory rape" against him by misleading a grand jury through the omission of "significant [exculpatory] information that would negate probable cause[.]" Id. at p. 4 (¶ 5). Assuming these facts to be true, Plaintiff has not stated a claim for the violation of a constitutional right. Plaintiff has not alleged more than a conclusory statement that his writings were "religious,"

---

[9] To the extent Plaintiff challenges the *outcome* of the custody hearing, this Court is without subject matter jurisdiction to question the state court's determination. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); see also Adkins v. Rumsfeld, 464 F.3d 456, 463 (4th Cir. 2006) (Rooker-Feldman doctrine is jurisdictional). The Rooker-Feldman doctrine prohibits "lower federal courts . . . from exercising appellate jurisdiction" respecting "state-court judgments." See id. (quotation omitted). This prohibition extends to complaints which request a federal court to review and vacate a state court custody determination. See, generally, Stratton v. Mecklenburg County Dep't of Soc. Servs., 521 Fed. App'x 278 (4th Cir. 2013).

and he has made no allegation concerning how their "religious" nature played any part in their use before the grand jury. Further, Plaintiff has not alleged facts which plausibly imply that the "religious" nature of his writings prompted Defendant Butler to retaliate against him.

Similarly, though Plaintiff conclusorily alleges that his writings constituted "free speech," Plaintiff has not alleged any facts showing that Defendant Butler sought to discriminate or retaliate against him in an unconstitutional manner based only on the content of his writings, to the extent such writings were constitutionally protected. See, e.g., Hartman v. Moore, 547 U.S. 250, 256 (2006) ("Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right, . . . and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out . . . ." (internal quotation marks omitted)). Rather, he appears to allege only that his "non-threatening" letters should not have been presented to the grand jury as evidence to institute criminal proceedings without his "consent." [Doc. No. 2] at pp. 3-4 (¶¶ 4-5).

Certain writings can form the basis of a criminal prosecution. See, e.g., United States v. White, 670 F.3d 498, 514-15 (4th Cir. 2012) ("'[S]peech is not protected by the First Amendment when it is the very vehicle of the crime itself.'" (quoting United States v. Varani, 435 F.2d 758, 762 (6th Cir. 1970)); United States v. Meredith, 685 F.3d 814, 819 (9th Cir. 2012) ("[T]he Supreme Court has carved out some limited categories of 'unprotected' speech, including 'obscenity, defamation, fraud, incitement, and speech integral to criminal conduct.'" (quoting United States v. Stevens, 559 U.S. 460, 468-69 (2010) (citations omitted)); Rice v. Paladin Enters., 128 F.3d 233, 245 (4th Cir. 1997) ("[W]here speech becomes an integral part of the crime, a First Amendment

defense is foreclosed even if the prosecution rests on words alone.”). Thus, mere presentment of his writings as evidence to support an indictment is not a violation of the Constitution.

Further, it appears from the First Amended Complaint that the writings were presented to the grand jury as corroborating evidence to support an indictment of “indecent liberties” and “statutory rape.” Without more facts, the Court is left to speculate about the content of his writings. However, even if Plaintiff alleges the writings were “non-threatening” or “religious” in nature, the writings very well could have corroborated a charge of “statutory rape” or other charge based on the writings’ content, when compared to other evidence available to Defendant Butler and the grand jury. Such a use would not be an unconstitutional use of Plaintiff’s writings. Thus, the First Amended Complaint fails to state a claim that Plaintiff’s First Amendment rights were violated simply because Defendant Butler presented his writings to a grand jury. Default judgment, therefore, cannot be awarded on this claim.

Likewise, without more facts, Defendant Butler’s receipt and use of Plaintiff’s writings do not constitute an unlawful “search” under the Fourth Amendment. “An individual does not have a ‘reasonable expectation of privacy’ in information that is ‘revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.’” United States v. Shah, 2015 U.S. Dist. LEXIS 826, at *14-15 (E.D.N.C. 2015) (quoting United States v. Miller, 425 U.S. 435, 443 (1976)); accord Manning v. Ross, 2013 U.S. Dist. LEXIS 125992, at *24-25 (M.D. Pa. 2013) (“First and foremost, from what can be gleaned from the facts provided by Plaintiff, the letters that led to the arrest [of] Plaintiff were handed to Defendants by Pamela Ross, and, therefore, because they were in the possession of a third party, i.e. Pamela Ross, Plaintiff did not retain a reasonable expectation of privacy in these letters.”).

Here, Plaintiff alleges that he sent his letters to the children's guardian ad litem, and the guardian ad litem then turned them over to Defendant Butler. Because Plaintiff gave the letters to the guardian ad litem – i.e., a third party – Plaintiff retained no reasonable expectation of privacy in them. Thus, the letters could lawfully be turned over to Defendant Butler by the guardian ad litem for Defendant to use as he wished. For this reason, the First Amended Complaint fails to state a claim that Plaintiff's Fourth Amendment rights were violated simply because a third party, to whom Plaintiff sent letters, disclosed those letters to a prosecutor without Plaintiff's consent. The Court cannot enter default judgment on this claim.

Additionally, Plaintiff makes an amorphous claim that his constitutional rights were violated because Defendant Butler "misled" a grand jury by not disclosing what Plaintiff contends to be exculpatory information during the grand jury's proceedings. However, the Constitution does not require a prosecutor to disclose exculpatory information during grand jury proceedings. See, e.g., United States v. Williams, 504 U.S. 36, 51-52 (1992) ("It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge. That has always been so; and to make the assessment it has always been thought sufficient to hear only the prosecutor's side. . . . [In the United States,] the suspect under investigation by the grand jury [has] [n]ever been thought to have a right to testify or to have exculpatory evidence presented."); United States v. Witasick, 443 Fed. App'x 838, 843 (4th Cir. 2011) (recognizing that the Supreme Court has unequivocally held that "'[i]mposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with [the adversarial] system.'" (quoting Williams, 504 U.S. at 52)). Here, Plaintiff's claim falls squarely within Williams and Witasick and must be rejected. Because the First Amended Complaint does not state a claim that Defendant Butler's failure to provide exculpatory

information to the grand jury violated Plaintiff's constitutional rights, default judgment on this claim is improper.

To the extent Plaintiff attempts to allege that the "indecent liberties" and "statutory rape" charges were not based on probable cause, and thus violated the Fourth Amendment, this claim also fails. It is clear from the First Amended Complaint that these charges were brought pursuant to a grand jury indictment. A grand jury indictment establishes the existence of probable cause as a matter of law. See, e.g., Giordenello v. United States, 357 U.S. 480, 487 (1958); Campbell v. City of San Antonio, 43 F.3d 973, 976 (5th Cir. 1995) (noting that an arrest warrant may be based on a grand jury indictment which establishes probable cause); accord Durham v. Horner, 690 F.3d 183, 188-89 (4th Cir. 2012) ("Durham is unable to establish a constitutional violation because, although the underlying criminal proceedings were terminated in his favor, the prosecution was plainly supported by probable cause, as conclusively established by the three indictments. It has long since been settled by the Supreme Court that 'an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause." (quoting Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975)). Here, Plaintiff has not alleged any facts that lead to the plausible conclusion that the grand jury's indictment, charging him with "indecent liberties" and "statutory rape," were not properly based upon probable cause. Thus, the First Amended Complaint fails to state a claim and default judgment against Defendant Butler should not be entered on this issue.

Plaintiff's First Amended Complaint also makes a general allegation that, in October 2007, Defendant Butler unlawfully charged him with "fraudulently burning [a] dwelling." [Doc. No. 2] at p. 5 (¶ 6). He claims that this charge was unlawful because "higher State Courts previously held that charge does not apply when no substantial harm" occurs to another's property or where

insurance fraud does not result. However, the First Amended Complaint fails to cite any authority for these legal assertions and it utterly fails to allege any facts that plausibly imply that the charge was not based upon probable cause. This Court will not speculate as to whether Plaintiff's conclusory allegations of unlawful conduct rise to the level of plausibility. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570. Therefore, the Court does not find that this allegation states a claim and will not enter default judgment against Defendant Butler on that basis.

Moreover, the First Amended Complaint alleges that, while Plaintiff was in state custody between 2009 and 2012, he was unlawfully transferred "back and forth" to a "mental institution" and forced to take "harmful drugs." [Doc. No. 2] at pp. 5-6 (¶¶ 7-8). Notably, Plaintiff does *not* argue that his actual confinement during that period was unconstitutional. Even assuming his allegations are sufficient to claim the deprivation of a constitutional right, Plaintiff has failed to establish a causal relation between Defendant Butler and these alleged deprivations. Plaintiff has not alleged any facts which plausibly imply that Defendant Butler *caused* Plaintiff to be transferred to the "mental institution" or forced him to take "harmful drugs." The absence of any well-pleaded facts supporting this causal relation is fatal to Plaintiff's claim against Defendant Butler. As a result, the Court declines to enter default judgment against Defendant Butler on this basis.

    iii.  PLAINTIFF'S "INTERNATIONAL HUMAN RIGHTS" CLAIM

Finally, Plaintiff has alleged that Defendant Butler violated his rights under "International Human Rights." [Doc. No. 2] at p. 1. However, Plaintiff's First Amended Complaint fails to cite this Court to any treaty or executive agreement of the United States that affords Plaintiff rights that may be vindicated in a Section 1983 action. Additionally, he has alleged no facts supporting the violation of any such treaty or executive agreement. Therefore, the First Amended Complaint fails to state a claim and default judgment may not be entered on this claim.

### iv. Conclusion

The Court has extensively and painstakingly reviewed each and every individualized claim against Defendant Butler that can be reasonably deduced from Plaintiff's First Amended Complaint. Finding that none of the claims asserted state a claim against Defendant Butler, the Court concludes that it would be improper to grant Plaintiff's motion for default judgment against him in his individual capacity. Accordingly, the Court **DENIES** Plaintiff's Motion for Default Judgment against Defendant Butler.

### 6.   *Leave to File Second Amended Complaint*

When a district court is inclined to dismiss a complaint for failure to state a claim, the court "should consider granting the plaintiff, and in particular, a *pro se* plaintiff, leave to amend his complaint." Fisher v. Winston-Salem Police Dep't, 28 F. Supp. 3d 526, 533 (M.D.N.C. 2014) (citing Ostrzenski v. Seigel, 177 F.3d 245, 252-53 (4th Cir. 1999)). Unless it is certain that a plaintiff cannot state a claim upon amendment to the complaint, then "the better practice is to allow at least one amendment." Id. (quoting Ostrzenski, 177 F.3d at 253). The Fourth Circuit has held that "*pro se* litigants are entitled to explicit notice of the consequences of various legal actions." See Carter v. Hutto, 781 F.2d 1028, 1033 (4th Cir. 1986); Wright v. Collins, 766 F.2d 841, (4th Cir. 1985); Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). However, this Court is neither required nor permitted to "bend the substantive requirements" faced by all litigants when "wading into the world of federal litigation" – *pro se* or not. See Williams v. Wicomico County Bd. of Educ., 2012 U.S. Dist. LEXIS 141665, at *8 (D. Md. 2012).

Because the Court has engaged in a *sua sponte* analysis of Plaintiff's First Amended Complaint in order to determine whether Plaintiff has stated a claim against Defendant Butler upon which a default judgment may be entered, the Court, in its discretion, has determined equity

requires that it give the Plaintiff notice of its decision and an opportunity to file a second amended complaint. See, e.g., Singleton v. Dean, 611 Fed. App'x 671, 671 (11th Cir. Aug. 4, 2015) ("Prior to dismissing an action *sua sponte* [based on the district court's determination that, after a review of the complaint's allegations, default judgment is not warranted], a court must provide the plaintiff with notice of its intent to dismiss and an opportunity to respond." (citing Surtain, 789 F.3d at 1248)). Plaintiff may utilize this opportunity by attempting to correct any of the deficiencies highlighted in this Court's Order. However, the Court takes no position regarding whether Plaintiff's claims might actually be cured; rather, the Court has determined only that Plaintiff should be given an opportunity to cure the deficiencies in his First Amended Complaint. Further, the Court will not permit Plaintiff an opportunity to amend his "official capacity" claims against Defendant Butler because those claims are claims against the state itself and the deficiencies surrounding them are incapable of being remedied.

Accordingly, as it relates to Defendant Butler, the Court declines to dismiss the First Amended Complaint outright and *in toto*. Instead, the Plaintiff is **GRANTED LEAVE** to file a second amended complaint within **THIRTY (30) DAYS** of the date of this Court's Order. If Plaintiff chooses to file a second amended complaint within the prescribed timeframe, then the second amended complaint *must* be served upon all parties against whom the Plaintiff alleges a claim. This includes, but is not limited to, the City of Statesville. See Fed. R. Civ. Pro. 4(j)(2). Failure to serve all parties may result in the summary dismissal of Plaintiff's claims against any such entity. See Fed. R. Civ. Pro. 4(m); see also Section II.C., *infra*. If Plaintiff chooses to file a second amended complaint, Plaintiff is also **DIRECTED** to closely follow and abide by the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure, which require Plaintiff's specific claims to be alleged separately and distinctly in numbered paragraphs and counts, and

which require Plaintiff to specifically identify each defendant against whom his claims are made. See Fed. R. Civ. Pro. 8(a) & (d); Fed. R. Civ. Pro. 10.

If Plaintiff chooses not to file a second amended complaint within the prescribed timeframe, then this Order will operate to dismiss all claims contained in the First Amended Complaint that are alleged against Defendant Butler in his individual capacity. Further, this Order will operate to dismiss Plaintiff's claims against the City, as provided below. See Fed. R. Civ. Pro. 4(j)(2) & (m); Section II.C., *infra*. Finally, the Department and Defendant Wall will be allowed to renew their motion to dismiss the First Amended Complaint at that time. See Section II.B., *infra*.

B.      Defendants' Motion to Dismiss

This Order has not analyzed any of Plaintiff's claims as they relate to the Department or Defendant Wall because such defendants were not the object of Plaintiff's motion for default judgment. The Court acknowledges that the Department and Defendant Wall have filed a motion to dismiss on statute of limitations grounds. [Doc. No. 5]. The Court further acknowledges that some of the claims alleged against Defendant Butler may be implicated in Plaintiff's claims against the Department or Defendant Wall; however, neither the Department nor Defendant Wall moved to dismiss on the grounds discussed herein. Nevertheless, the Court finds that, because of its holding in Section II.A., *supra*, and its decision to allow Plaintiff an opportunity to file a second amended complaint, Section II.A.6., *supra*, it is inappropriate to rule on Defendants' motion to dismiss at this time. This is because Plaintiff could amend his complaint to such a degree that the Defendants' motion to dismiss is either mooted or refuted. Accordingly, the Court **DENIES WITHOUT PREJUDICE** Defendants' motion to dismiss. [Doc. No. 5]. Should Plaintiff file a second amended complaint within the prescribed time, the Defendants may then file a motion to

dismiss that complaint. Should Plaintiff fail to file a second amended complaint, then the Defendants are granted leave to re-file their motion to dismiss upon the Plaintiff's failure to do so.

C.    Plaintiff's Claim Against the City

Plaintiff has also named the City of Statesville as a defendant in this lawsuit; however, the docket shows that service has never been perfected on the City. The Court declines to review the viability of any claims asserted in the First Amended Complaint against the City because the record clearly shows that the City has not been served. Plaintiff's proposed order, filed with his motion for default judgment, appears to also request a default judgment against the City. However, the City has not been served and the Court cannot, therefore, grant any affirmative relief against it. Thus, if the Plaintiff chooses to file a second amended complaint and continue asserting a claim against the City, the Plaintiff must serve the City in accordance with the Rules. See Fed. R. Civ. Pro. 4(j)(2). If Plaintiff fails to serve the City with the second amended complaint, or fails to file a second amended complaint, then his claims against the City will be dismissed. See Fed. R. Civ. Pro. 4(m).

III.    **DECRETAL**

**IT IS, THEREFORE, ORDERED THAT**:

(1)    Plaintiff's Motion for Default Judgment is **DENIED**;

(2)    Defendants' Motion to Dismiss is **DENIED WITHOUT PREJUDICE**;

(3)    Plaintiff's "official capacity" claims against Defendant Butler are **DISMISSED WITH PREJUDICE**;

(4)    Plaintiff is **GRANTED LEAVE** to file a second amended complaint within **THIRTY (30) DAYS** of this Order;

(5)     The Clerk is **ORDERED** to mail, via certified mail return receipt requested, a copy of this Order to each of the named individual defendants, as well as the City of Statesville, and the Iredell County District Attorney's Office. The Clerk shall mail the Order to the attention of the officer(s) or employee(s) holding the positions identified in Rule 4(j)(2) of the Federal Rules of Civil Procedure and N.C. Gen. Stat. § 1A-1, Rule 4(j)(5), specifically as follows: (1) to the City of Statesville – Mayor Costi Kutteh, P.O. Box 1111, Statesville, N.C. 28687-1111; and (2) to the Iredell County District Attorney's Office – District Attorney Sarah Kirkman, Iredell County Hall of Justice Annex, 201 East Water Street, Statesville, N.C. 28677.

**SO ORDERED**.

Signed: February 3, 2016

Richard L. Voorhees
United States District Judge